PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25-MJ-70348 |
| Plaintiff, | UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRETRIAL DETENTION |
| v. | |
| MIGUEL VILLAVIVAR, | Date: April 2, 2025 (Detention Hearing)<br>Time: 10:30 a.m.<br>Court: Honorable Lisa J. Cisneros |
| Defendant. | |

Defendant Miguel Villavivar is an admitted longtime Sureño gang member in Santa Rosa, California, who was found in possession of a loaded, stolen Glock during a traffic stop in November 2024. As relevant to the charged offense, he has been in the United States without lawful status for more than 20 years, has been convicted of multiple prior offenses, and is a prolific purchaser, possessor, and poster of firearms on Instagram. For these reasons, he poses a significant danger to the public and a risk of flight, and should be detained pending adjudication of his case.

1                              **BACKGROUND**

2  **I.    OFFENSE CONDUCT**

3        A.    <u>Villavivar possessed a stolen, loaded handgun in November 2024</u>

4        On November 14, 2024, Villavivar was stopped by the California Highway Patrol for failing to
5  stop at a stop sign in Sonoma County.  The CHP officer approached the passenger side of the vehicle
6  and asked Villavivar (who was alone in the car) for his driver's license.  Villavivar provided the officer
7  his license, and about one minute into their interaction, the officer observed a gold-colored handgun
8  sticking out from under the driver seat of the vehicle.  The officer collected the firearm (pictured below),
9  which was a loaded Glock 19 pistol, serial number BEYX780, previously reported stolen out of Plano,
10 Texas on May 18, 2021.  The Glock 19 was loaded with four rounds of 9mm ammunition.



Villavivar was arrested for possession of a stolen and loaded handgun, violations of California Penal Codes 25850(c)(4), 496(a), and 25400(c)(2). After being advised of his *Miranda* rights, Villavivar waived his rights and admitted to possessing the firearm and being a Sureño gang member for approximately 15 years. Villavivar told the officer that he had possessed the firearm for 6-8 years, that the gun was given to him by a member of a Mexican cartel, and that Villavivar carried the gun for self-protection.

After Villavivar's arrest, FBI TFO Cyril Ruffin interviewed Villavivar again at the Sonoma County Jail. TFO Ruffin read Villavivar his *Miranda* rights. Villavivar advised that he understood and expressly waived his rights by speaking to TFO Ruffin. Villavivar stated that he "fucked up" and that he should not have had it on him, referring to the firearm. Villavivar stated that the reason he carried a gun was that a former friend had sent people to threaten and kill Villavivar in relation to an incident involving "stuff with weed" and people wanting to "collect". Villavivar stated that approximately six years ago he had been stopped by African Americans with guns who threatened him. Villavivar felt like they were sent by his former friend. After that, Villavivar bought the gun and continued to have the gun on him when he was at work.

Villavivar's Mirandized admissions about being a longtime Sureño gang member are also borne out by his criminal history and his tattoos. Dating back to 2006, Villavivar first admitted to Santa Rosa Police that he was a "Puro Sureños Cholo" or "PSC" gang member, and had "gang tattoos" per Field Contact incidents dated 10-26-2006 and 09-18-2007. He has continued to get gang tattoos more recently, as evidenced by photos he has posted since 2020, including a popular Sureño symbol in the shape of the Mayan symbol for the number 13, and the Aztec War God symbol. Villavivar also has a tattoo of an individual holding a smoking firearm.




B.     <u>At the time that Villavivar possessed the firearm and ammunition, he was unlawfully in the United States</u>

According to his birth certificate, Villavivar was born in Oaxaca, Mexico in 1987. The Department of Homeland Security (DHS) has issued several detainers and notices to appear for Villavivar after prior arrests in California for criminal offenses. For example, on January 5, 2009, DHS issued a Notice to Appear for removal proceedings to Villavivar, who was then in ICE custody in San Francisco. According to DHS documentation, Villavivar had come to the attention of an Immigration Enforcement Agent on December 31, 2008, when Villavivar was arrested and booked into the Sonoma County Jail on a warrant for the charge of California Penal Code 12020(a), Felony Possession of a Deadly Weapon.

The Notice to Appear indicated that Villavivar was "an alien present in the United States who has not been admitted or paroled." DHS further alleged that: (1) Villavivar was "not a citizen or national of the United States"; (2) Villavivar was a "native of Mexico and a citizen of Mexico"; (3) Villavivar had "arrived in the United States at or near an Unknown place, on or about an Unknown date"; and (4) Villavivar was "not then admitted or paroled after inspection by an Immigration Officer." The Notice to Appear charged that Villavivar was subject to removal from the United States pursuant to

GOVERNMENT DETENTION MEMORANDUM     4
25-MJ-70348

section 212(a)(6)(A)(i) of the Immigration and Nationality Act, which makes it unlawful to enter the United States without being admitted or paroled.

On January 20, 2009, Villavivar signed a DHS ICE Voluntary Departure and Verification of Departure form, which informed Villavivar that he was required to depart from the United States voluntarily on or before January 22, 2009. Villavivar's signature acknowledged the condition and receipt of the form, though it is unknown whether Villavivar actually self-deported.

On March 15, 2013, DHS issued another Immigration Detainer for Villavivar, sent by DHS San Francisco to the Sonoma County Jail, where Villavivar was again in custody. The Immigration Detainer notified Sonoma County Jail officials that DHS had reason to believe Villavivar was an alien subject to removal from the United States. The Immigration Detainer requested that Sonoma County Jail hold Villavivar for no longer that 48 hours beyond the time that Villavivar would have otherwise been released and requested that Sonoma County Jail provide Villavivar with a copy of the Immigration Detainer.  DHS has also certified that, as of March 15, 2025, there is no record of Villavivar ever being granted authorization to enter the United States.

In addition to the DHS records and prior voluntary departure described above, there is recent social media evidence directly proving Villavivar's subjective knowledge of his illegal immigration status and the corresponding prohibition on possessing firearms.  Specifically when reviewing returns from a federal search warrant, agents located a chat on Villavivar's Instagram account from May 9, 2024.  In that chat with another Instagram user, Villavivar stated that he was aware that he was prohibited from possessing firearms based on his illegal immigration status.

**miguelvillavivar**: I like guns too
**_ddcc10**: U go shooting
**miguelvillavivar**: Yess
**_ddcc10**: I need to learn how to shoot lol
**_ddcc10**: I have my permit but I havnt got one yet
**miguelvillavivar: Neta I'm illegal as fcuk [*sic*]**
**_ddcc10**: Hahaha fuckkkk
**_ddcc10**: Ur bad bad
**_ddcc10**: Jk

GOVERNMENT DETENTION MEMORANDUM        5
25-MJ-70348

Villavivar's account then sent the other user a video (at right), which panned to show three handguns laid out next to each other on the table, with ammunition in view behind the handguns. One of the firearms was a loaded Glock 19 pistol with a gold-colored slide, as pictured in the video screenshot at right. This appears to be the same firearm that CHP recovered from Villavivar six months later in November 2024.



Villavivar's Instagram account is full of other instances of him buying and selling firearms. Around the same time in May 2024, Villavivar posted a "story" on his Instagram that included a photo (below at left) of two gold-plated guns and a large roll of cash.



Likewise, on January 18, 2024, Villavivar appeared to buy another gold-plated firearm (below at right) from a Instagram user. Villavivar said he wanted to buy a "toy," a common slang term for a gun. When the user sent the photo below, Villavivar asked him "how much." The user said "12," likely meaning $1,200. Villavivar asked if the gun jammed, and then added "The 45 you sold me jammed after the first shot," an apparent reference to a prior firearm that Villavivar had purchased from this individual and fired. They eventually agreed on a sale price of "11" for the gun, and Villavivar provided his home address for the delivery. The seller asked if Villavivar also wanted to buy ammunition for the gun, and Villavivar agreed to buy a box each of 9mm and .40 caliber ammunition. The last message from the seller was "On my way!"



GOVERNMENT DETENTION MEMORANDUM          6
25-MJ-70348

Also in 2024, Villavivar's account posted a photograph of an "AR" style assault rifle with pistol grip, forward grip and high-capacity magazine. The rifle (at right) is laying on what appears to be an Audi center console.[1] Villavivar's perspective in taking the photograph appears to be from the driver seat, directly next to the rifle.



In a story posted to his account in June 2022 (below), Villavivar panned the camera to a gun on a bed.



In a direct message from May 2022, Villavivar sent another Instagram user a photo (below at left) of what appears to be an assault rifle with an scope and extended magazine. In 2021, Villavivar sent another Instagram user a photo of a .45 caliber handgun (below at right) and asked how much the user would charge to engrave his gun.

---

[1] Villavivar is listed in a Santa Rosa Police Report as the owner of a 2011 Audi A4 sedan.

GOVERNMENT DETENTION MEMORANDUM    7
25-MJ-70348



In 2021, Villavivar posted the photo below, showing the array of rifles below.



Also in 2021, Villavivar posted a video of himself (at right) firing a similar-looking assault rifle at a gun range in Northern California.

In addition to these instances of possessing and purchasing firearms, Villavivar has a prior misdemeanor conviction from 2009 for possession a dangerous weapon, for which he received probation and a jail sentence. He subsequently suffered another conviction in 2013 for driving without a valid license, for which he again received probation and a jail sentence.



# ARGUMENT

## I. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

"[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). The four factors to be considered under § 3142(g) are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. VILLAVIVAR'S DANGER TO THE COMMUNITY & RISK OF NON-APPEARANCE

Applying that legal framework, the § 3142(g) factors demonstrate that detention is appropriate here given Villavivar's significant danger to the community and his risk of non-appearance.

First, the offense conduct is very serious. Despite prior convictions, and knowingly being prohibited from possessing a firearm based on his immigration status, Villavivar was caught driving around with a loaded, stolen Glock at his ready disposal. As his own admissions and the Instagram records described above show, this was no one-off situation. Villavivar admitted that he had had the gun for at least 6 years, and that he possessed the gun for protection (i.e., to use it if he felt he needed

to). And since at least 2021, Villavivar has been a prolific purchaser and possessor of firearms on Instagram, glamorizing gun possession through gold plating, engraving, and rolls of cash. Purchasing, possessing, and publicizing dangerous weapons in such a way poses a significant risk to the community, a risk that is amplified by his admitted longtime affiliation with Sureño criminal street gangs in Santa Rosa. The facts of the offense and related criminal history support pretrial detention.

Villavivar's history of non-compliance with the law also raises the possibility that he will abscond from pretrial supervision and go AWOL. He has previously disregarded an order to voluntary deport and remain outside the United States and has suffered multiple prior convictions. Given this disregard for the law and other government directives, there is no reason to believe that he will comply with conditions imposed by the Court now. And given the potential penal and immigration-related consequences associated with this case, there is a significant incentive for Villavivar to flee, including to Mexico, where he is a national. This history of non-compliance with the law and the incentive to flee demonstrate by a preponderance of the evidence that Villavivar is a flight risk.

## CONCLUSION

Given the lack of conditions that can reasonably assure the safety of the community, or ensure Villavivar's appearance at future court hearings, the government respectfully requests that he be detained pending trial.

DATED: April 1, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/ Leif Dautch
LEIF DAUTCH
Assistant United States Attorney